THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD GRIFFITHS, Defendant-Appellant.

Fourth District   No. 17449

Opinion filed February 8, 1983.

Jeffrey B. Levens, of Sturm and Levens, of Springfield, for appellant.

Edmond H. Rees, State's Attorney, of Carlinville (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction by a jury of the crimes of murder, aggravated arson, and arson, and his sentence of 40 years' imprisonment for murder and 30 years' imprisonment for the crime of aggravated arson.

On appeal he argues that (1) he was not proved guilty beyond a reasonable doubt; (2) certain evidence was improperly admitted; (3) the trial court abused its discretion in denying his motion for continuance made on the day of trial; and (4) the trial court abused its discretion in sentencing him to 40 years for murder and 30 years for aggravated arson. We affirm.

On the night of October 5, 1979, a fire at the residence of Don and Esther Cameron in Virden, Illinois, resulted in the death of their 11-year-old son Mark. Mrs. Cameron testified that she awoke at approximately 10:40 p.m. and saw flames coming in through a window between the kitchen and back porch of her home. Mrs. Cameron called the fire department and managed to escape through a second story bedroom window. Another son, Todd, and his friend, Jamie, also escaped, but Mark perished. He was found several feet from the window through which Mrs. Cameron and Todd fled from the fire. The testimony of the State's expert witnesses was uncontradicted that an accelerant was used to start the blaze and that the fire began on the back porch. Also uncontested was the fact that the victim had died in the fire.

The State produced a substantial amount of circumstantial and testimonial evidence that defendant was the perpetrator of the offenses. This evidence included numerous threats against the lives of the Camerons over a period of several months, including a threat made less than one hour before the fire; defendant's admission of the crime to acquaintances; testimony that the defendant was only a few blocks from the Cameron residence shortly before the fire was reported; and further testimony that when defendant was arrested for speeding a short distance from Virden later that evening the arresting officer noticed the smell of kerosene. We conclude that the evidence overwhelmingly supports the verdict of the jury.

As noted in *People v. Bernette* (1964), 30 Ill. 2d 359, 367, 197

N.E.2d 436, 441, a conviction may be sustained upon circumstantial evidence as well as direct evidence, it being necessary only that the proof of circumstances must be of a conclusive nature and leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfied the jury beyond a reasonable doubt of the accused's guilt.

Defendant argues that his conviction must be reversed because he finds several asserted hypotheses of innocence. This contention requires a conclusion that the evidence at trial is entirely circumstantial. In *People v Watts* (1976), 36 Ill. App. 3d 1011, 344 N.E.2d 606, this court, following established precedent, held that where a defendant's conviction rests entirely on circumstantial evidence the proof must not only be consistent with defendant's guilt, but must be inconsistent with any reasonable hypothesis of innocence.

In this record, defendant's conviction is not based entirely on circumstantial evidence. While there is some circumstantial evidence, two witnesses testified to defendant's admissions concerning the fire, and numerous witnesses testified concerning defendant's whereabouts and acts immediately preceding and after the discovery of the fire. See *People v. King* (1978), 58 Ill. App. 3d 199, 373 N.E.2d 1045.

The argument either misapprehends or ignores the function of the relationship between circumstantial evidence and the reasonable hypothesis of innocence stated in the second paragraph of Illinois Pattern Jury Instruction, Criminal, No. 3.02 (1968). As to that part of the instruction, it is accepted case law that the language "circumstances proved exclude every reasonable theory of innocence" is to be given only when the proof of guilt is entirely circumstantial. (*People v. French* (1978), 59 Ill. App. 3d 353, 375 N.E.2d 502.) In *People v. Wilson* (1948), 400 Ill. 461, 480, 81 N.E.2d 211, 220, decided prior to the time of the Illinois Pattern Jury Instruction, the court stated:

> "If the evidence is wholly circumstantial it possibly may prove his guilt beyond a reasonable doubt, but it must be closely scrutinized, and if, when fairly considered, it presents another hypothesis consistent with innocence, the latter must be adopted in preference to guilt."

See also *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503.

■■ ■ Thus, the test of a "reasonable hypothesis of innocence" is limited entirely to matters of circumstantial evidence and is not prop-

erly extended to testimonial evidence which is also in the record. Thus, when defendant conjectures from fragments of testimony that Mr. and Mrs. Cameron had financial motives to burn their own home, and that the ensuing death of their handicapped son relieved them of a financial burden, it is clear that such argument cannot be brought within the ambit of any circumstantial evidence of defendant's guilt, and the argument will not be accepted as a reasonable hypothesis of innocence.

Defendant's other arguments concern the admission of items of clothing seized from defendant upon his arrest in 1979, and the admission of statements of witnesses which defendant objects to as improper hearsay. We divide these arguments into those properly preserved and those waived on review.

Defendant's contention that certain clothing seized at his initial arrest should have been suppressed because of alleged violations of section 108—2, 108—4, and 108—11 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, pars. 108—2, 108—4, 108—11) has not been preserved for review.

■ A defendant who objects to the search and seizure of evidence has the burden of presenting both the legal and factual bases for the motion to suppress. (Ill. Rev. Stat. 1981, ch. 38, par. 114—12(b); *People v. Berg* (1977), 67 Ill. 2d 65, 364 N.E.2d 880; *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432.) The fact that a warrantless search had occurred was neither established with proof, nor did defendant identify any legal ground upon which such evidence could be excluded. Clearly, defendant has not met his burden to demonstrate that the items should have been suppressed. Moreover, even if we overlook defendant's waiver, the authorities are consistent in holding that a failure to inventory and/or make a return is a technical violation of defendant's rights and harmless in nature, not requiring suppression of the evidence. *People v. Smith* (1972), 50 Ill. 2d 229, 278 N.E.2d 73; *People v. York* (1963), 29 Ill. 2d 68, 193 N.E.2d 773; *People v. Pruitt* (1974), 16 Ill. App. 3d 930, 307 N.E.2d 142.

Although plain errors affecting substantial rights may be reviewed under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)), despite the absence of objection at the trial level, we find that doctrine inapplicable here. Before an error will be considered to rise to the level of plain error, the error must affect the substantial right of the defendant, or the evidence in the case must be closely balanced. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.

Of those evidentiary objections which were properly preserved for

review, none require that defendant's conviction be reversed. During the course of the trial the jury heard evidence from various witnesses that defendant had been married to the victim's sister, Susan Cameron, in 1977 and that she had given birth to defendant's child. In May of 1979, Susan left the defendant without telling him where she and the baby were going. During defendant's testimony, he did not deny that threats were made against the Cameron family, and in fact sought to justify this because of the family's refusal to tell defendant where his son was living. During the course of the prosecutor's questioning, Mrs. Cameron was asked by the prosecutor why the family refused to tell the defendant the whereabouts of his son. When asked why she didn't want to tell the defendant, Esther Cameron responded:

"A. [Esther Cameron]: Because we knew from past experience that he—that he—uh—wouldn't be a fit father; that he several times he beat up on Susan and he was drunk quite a bit."

Defendant's contention on appeal that this constitutes inadmissible hearsay is untenable. We are unable to see how this constitutes an out-of-court statement offered to prove the truth of the matter asserted. See *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223.

Other statements of Esther Cameron were inadmissible hearsay and should have ben excluded. On redirect, the State's Attorney again questioned Mrs. Cameron as to her reasons for refusing to tell defendant the whereabouts of his son:

"Q. [State's Attorney]: What other reasons why you didn't want him to know where they were at?

A. [Esther Cameron]: Uh—well, I—he just—I knew that he, you know, was on drugs.

MR. HEBRON [defense counsel]: Your Honor, I would object to that. How does she know that sort of thing?

MR. REESE [State's Attorney]: Your Honor—

THE COURT: Well, the objection is overruled and you may proceed.

A. [Esther Cameron]: Well, I really can't say that I—I just heard things that we had heard."

■ Here the objection was validly overruled when made since no hearsay was disclosed at that time. The defendant should have moved to strike the testimony when it became apparent that it was based on hearsay. Nevertheless, in light of the overwhelming proof of defendant's guilt, any error in its admission was harmless. *People v. Murdock* (1971), 48 Ill. 2d 362, 270 N.E.2d 21; *People v. Requena* (1982), 105 Ill. App. 3d 831, 435 N.E.2d 125.

Defendant also complains of testimony of Mrs. Cameron which related a telephone conversation from defendant's mother. During the phone conversation, defendant's mother allegedly told Mrs. Cameron that defendant had a gun and was coming over to the Cameron residence. Defendant objected to this testimony, but the trial court overruled the objection on the basis that defendant had opened the door to evidence of threats against the Cameron family.

■ The trial court improperly overruled this objection. Although the general rule is that a party who opens the door to testimony on a particular subject (*i.e.*, threats against the Camerons) is precluded from objecting to evidence on the same subject, such a rule does not extend to foreclose a party from objecting to evidence on grounds not violated by the party's first admission of this evidence. (E. Cleary and M. Graham, Handbook of Illinois Evidence sec. 103.4, at 9 (3d ed. 1979); *People v. Penland* (1978), 64 Ill. App. 3d 656, 381 N.E.2d 840.) Assuming, arguendo, that the statement was improperly admitted into evidence, we find the record is replete with testimony of frequent threats by defendant stated to various members of the Cameron family and to other witnesses referring to physical harm or death; the making of various statements is uncontradicted. (See *People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169.) In the light of the extensive evidence, and the numerous threats, any error in this ruling was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824, 828.

Other evidence which defendant claims was improperly admitted is People's Exhibit No. 26, a photograph of the back seat of defendant's car taken on the night of the fire showing numerous articles of clothing piled in the car. Although defendant apparently concedes that evidence of flight is admissible as proof of guilt, he argues that the relevance of this exhibit was conditioned on the existence of the unproved assumption that he was fleeing the scene of the crime.

Evidence of flight has long been held admissible as a fact from which the jury may infer consciousness of guilt. (*People v. Rossini* (1962), 25 Ill. 2d 617, 185 N.E.2d 831; *People v. Thomas* (1979), 72 Ill. App. 3d 28, 389 N.E.2d 1316.) It is also correct that where an item's relevance depends upon unproved assumptions which find no support in the record, the evidence may not properly be admitted. *People v. Newbury* (1972), 53 Ill. 2d 228, 290 N.E.2d 592.

We note initially that the issue of flight was not argued to the jury by the prosecution. Again, as an actual matter of record, there was sufficient evidence of flight to support the admission of the exhibit.

■ One Dwinnells, who saw the defendant shortly before the fire sirens went off, testified that defendant was in a hurry, and Debbie Talbert testified that five to 10 minutes before she heard the sirens defendant ran a stop sign, drove quickly down the street to his house and through her ex-husband's front yard which was adjacent to defendant's house. When defendant was stopped in Chatham for speeding the same night, Officer Malone testified that defendant was traveling 70 mph in a 45 mph speed zone, and that defendant had clothing and his dog in the back seat. We conclude that there was ample evidence in the record to support the admission of People's Exhibit No. 26. *People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011; *People v. Mentola* (1971), 47 Ill. 2d 579, 268 N.E. 2d 8.

We find without merit defendant's argument that the trial court abused its discretion in denying his motion for continuance. A review of the time sequence of the proceedings prior to trial demonstrates no abuse.

The attorney who tried the case was the third appointed. His request made shortly after appointment for a continuance of 45 days for preparation was granted. A week before the trial date, defendant sought a further continuance. The prosecution objected as numerous witnesses had been called, including two from out of the State. A continuance of two days was granted. On the morning of trial defendant again moved for a continuance, stating that on the day before he had concluded that he needed time to find an expert witness in the field of arson. The trial court denied the motion but indicated that he would consider a continuance if defendant found an expert. It is to be noted first that the fact of arson was not a contested issue, and it is not suggested in the record how an expert witness may establish the identity of the arsonist, particularly where, as here, the house had been completely rebuilt and no physical investigation was possible.

The decision of whether to grant a continuance to permit further time to prepare a case necessarily depends upon the facts surrounding the request. Such a decision is left to the sound discretion of the trial court. (*People v. Williams* (1982), 92 Ill. 2d 109, 440 N.E.2d 843; *People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.) A motion for a continuance cannot be said to have been improperly denied unless it appears that the refusal of additional time has embarassed the accused in the preparation of his defense, causing prejudice. (*Canaday*.) As section 114—4(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114—4(e)) indicates, "motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the mov-

ant."

■ Defendant's reliance on *People v. Dunham* (1929), 334 Ill. 516, 166 N.E. 97, is clearly inapposite. In *Dunham*, only nine days elapsed between the date defendant was charged with forgery and the date he was forced to trial. Here, from the time of counsel's appointment until trial there was eight weeks for preparation. Even if two weeks can be considered to have been devoted to preparing for the other case, there still would have been six weeks until trial and a further week before any evidence was presented on defendant's behalf. Counsel's statement that he talked with the investigator for the first time on July 26 and his later admission that he made only cursory efforts to seek an expert belies any claim of abuse of discretion by the trial court.

Finally, defendant marshalls numerous arguments in support of his claim that the trial court abused its discretion in sentencing him to 40 years for murder and 30 years for aggravated arson. Defendant makes the routine assertions that the trial court failed to consider as a factor in mitigation that he did not contemplate that his actions would cause serious harm; that the trial court failed to consider that he acted under a strong provocation; that the trial court penalized him for protesting his innocence at the sentencing hearing; and that the trial court improperly considered evidence of criminal activity which did not result in a conviction.

■ We disagree with defendant's assessment of the record at the sentencing hearing. Statements of the trial court at sentencing indicate that it considered evidence in mitigation offered by the defendant, the presentence report, and the arguments of counsel within the context of those factors in aggravation and mitigation of sections 5—5—3.1 and 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.1, 1005—5—3.2). Defendant's suggestion that the trial court failed to consider that he did not contemplate that his actions would cause or threaten physical harm has no appeal and finds no support in the record. Defendant's arguments that his actions of setting fire to the Cameron residence which resulted in the death of Mark Cameron were the result of the Camerons' refusal to tell him the whereabouts of his son and should have been considered as a factor in mitigation as "strong provocation" is not persuasive. Provocation is usually restricted to physical assault, mutual quarrel or combat, adultery, and other situations not comparable to that at bar. (See *People v. Curwick* (1975), 33 Ill. App. 3d 757, 338 N.E.2d 468.) The trial court is not required to recite for the record each factor of section 5—5—3.1 and the evidence in sup-

port of or against such finding. See *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.

■ The suggestion that the trial court erred in considering defendant's threats as criminal activity not resulting in the conviction is foreclosed by the supreme court's decision in *La Pointe*, holding that the trial court may properly consider evidence of criminal activity not resulting in a conviction if relevant and accurate and subject to cross-examination. These assurances of accuracy were present here. Again, the testimony concerning threats by defendant was relevant and material to establish his state of mind and purpose.

●■ Lastly, the defendant's suggestion that the trial court considered his claim of innocence to impose a more severe sentence is not supported by the record. It is, of course, improper to impose a more severe sentence merely because a defendant claims he is innocent at the time of sentencing. (*People v. Porter* (1980), 83 Ill. App. 3d 720, 404 N.E.2d 337.) We do not agree that the trial court did so. Rather, the trial court merely indicated that despite the defendant's claim of innocence and the claims of innocence offered by other witnesses on his behalf, the jury's verdict was determinative on the issue of guilt.

●■ Our review of the record persuades us that the trial court considered all of the relevant evidence in the light of the statutory factors required. Defendant's sentences of 40 years for murder and 30 years for aggravated arson cannot be said to be an abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Defendant argues numerous issues, most of which were not preserved in the record and may properly be deemed waived, and are not sufficient to constitute plain error. He also argues the credibility of individual witnesses, including a man and woman from Arizona who testified to defendant's admissions concerning setting the fire. The jury was aware of defendant's contentions that those witnesses may be biased or hostile, but their credibility was properly a matter to be measured by the jury. It is reasonable to conclude that by reason of the time and distance, neither witness could have been aware of the fire and the death in the absence of defendant's statements to them.

The judgment is affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.