NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180068-U

NO. 4-18-0068

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 4, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| JOSHUA L. JONES, | ) | No. 13CF1297 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Phoebe S. Bowers, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, finding the trial court's sentence was not an abuse of
discretion and the trial court's consideration of defendant's failure to accept
responsibility was not a significant factor in sentencing.

¶ 2     In September 2017, a jury found defendant, Joshua L. Jones, guilty of one count
of unlawful delivery of a controlled substance, a Class 2 felony pursuant to section 401(d) of the
Illinois Controlled Substances Act (Act) (720 ILCS 570/401(d) (West 2016)). Defendant filed a
posttrial motion claiming several errors, none of which are relevant to this appeal. The motion
was denied, and defendant was sentenced to six years in the Illinois Department of Corrections
(IDOC). Defendant's motion for reconsideration of sentence alleged the trial court erred in
sentencing by overemphasizing factors in aggravation, underemphasizing factors in mitigation,
and effectively penalizing defendant for a "lack of remorse." The motion was denied, and
defendant appeals.

¶ 3                    I. BACKGROUND

¶ 4          Defendant was originally charged by information with four counts. Counts I and

II alleged unlawful delivery of a controlled substance while within 1000 feet of church property

on two different dates. Each offense was a Class 1 felony pursuant to the Act (720 ILCS

570/401(c) (West 2016)). Counts III and IV, alleging resisting a peace officer and unlawful

possession of cannabis, were severed prior to defendant's first trial and are not part of this

appeal.

¶ 5          Through a series of circumstances also not relevant to this appeal, defendant was

tried and acquitted of count I, retried on count II as the result of a posttrial motion for which

there was a hung jury, retried a second time, and found guilty of the amended charge of unlawful

delivery of a controlled substance, a Class 2 felony under the Act (720 ILCS 570/401(d) (West

2016)).

¶ 6          The charges in count II arose from a drug investigation conducted by the Street

Crimes Unit of the Decatur Police Department. On the evening of April 23, 2012, a long-time

confidential informant named James Wilson, working with Decatur police officer Chad Ramey,

participated in a controlled purchase of less than one gram of cocaine from defendant. The

purchase began with a court-approved eavesdrop conducted on a telephone call placed by Wilson

to defendant earlier in the afternoon to set up the buy. Using video- and audio-recording

equipment, both the phone call and the transaction were recorded, and the recordings were later

played for the jury.

¶ 7          After Wilson called defendant to set up the buy, he was searched by Ramey, given

$40 in cash, and then proceeded to the prearranged location where he was to meet defendant.

Upon entering the vehicle defendant was driving, Wilson observed two other people present he

did not know, one in the front passenger seat and the other in the rear passenger seat immediately behind defendant. At trial, Wilson testified he handed defendant the $40 and in return, he received two baggies of what ultimately tested to be cocaine from defendant. He was dropped off by defendant shortly thereafter, returned to Ramey's vehicle, and turned over the two plastic baggies. He also submitted to another search by Ramey. The audio and video equipment recorded all that transpired from the time it was installed. It recorded the phone call earlier in the day, as well as Wilson meeting with defendant and returning to Ramey's vehicle. Although it recorded defendant reaching back at some point during the interaction between Wilson and defendant, it did not specifically show any actual transfer of money or plastic bags between them. During the time Wilson was walking to and from the car and while inside, the camera view bounced and moved around somewhat; however, the recording was consistent with the testimony of both Wilson and defendant, excluding the transaction itself. Ramey's testimony corroborated Wilson's for the events before and after the controlled buy, but he could not say what transpired in the vehicle other than what he saw and heard on the audio and video equipment. The State presented a chain-of-custody witness's testimony by stipulation, and Joshua Stern, a forensic scientist with the Illinois State Police Crime Laboratory in Springfield, testified to the receipt and analysis of the two packets found to contain cocaine.

¶ 8        Defendant and the two passengers testified on his behalf, denying any drug transaction occurred. Defendant said the motion observed on the video was him reaching into the backseat to move a child's car seat out of the way to make more room for Wilson, whom he described as a "fat dude." He offered no explanation for why Wilson was in his vehicle for such a short time and said he did not know why he exited so quickly. Everyone agreed to the accuracy of the audio and video recordings played for the jury.

¶ 9         In September 2017, the jury found defendant guilty of one count of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2016)). Defendant's posttrial motion contended the verdict was against the manifest weight of the evidence and claimed various errors during the trial, which are not part of this appeal.

¶ 10        In November 2017, neither the State nor defense presented evidence at the sentencing hearing, relying instead on the evidence presented at trial and in the presentence investigation (PSI) report filed by court services. The parties agreed that due to defendant's prior criminal history, the offense for which he faced sentence was both extended-term eligible and nonprobationable, subjecting defendant to a possible sentence of 3 to 14 years in IDOC (730 ILCS 5/5-4.5-35(a) (West 2016)) and a mandatory supervised release (MSR) term of 2 years (730 ILCS 5/5-4.5-35(l) (West 2016)). Defendant's statement in allocution was as follows:

> "Um—I want to say to my family, um—I love you all.
>
> ***
>
> I appreciate the support. Um—we knew this day was coming for about five years now. About five and a half years. Um—I got a good defense. A—I'm just gonna [*sic*] keep on fighting. That's all."

The State noted defendant's prior criminal history as set forth in the PSI report:

> "(1) Aggravated Battery/Great Bodily Harm, Class 3 felony, 3 yrs. DOC, 1999.
>
> (2) Aggravated Fleeing Police/21 mph over, Class 4 felony, 24 mo. Probation, 2004.
>
> (3) Other Amount Meth/Analog [which everyone agreed was incorrect and should have been cocaine], Class 2 felony, 24 mo. TASC Probation, 2004.
>
> (4) Possession Amount Controlled Substance, Class 4 felony, Probation terminated, 18

mo. Conditional Discharge, 2006."

¶ 11    In addition, defendant had one driving under the influence and seven driving on revoked or suspended license convictions. The State also argued defendant lied when he testified at trial, which should be taken into consideration by the trial court, and recommended six years in IDOC. Defense counsel reiterated his argument at trial that the confidential source was not truthful about what transpired. He noted as factors in mitigation there was no serious harm or threat of harm to anyone and that defendant's criminal conduct was the result of circumstances unlikely to recur. Counsel also argued defendant's character and attitude were such that he was not likely to commit another crime. He recommended the minimum sentence of three years. The trial court's comments at the imposition of sentence were as follows:

"I've considered the evidence at trial. I've considered the [PSI], the arguments of counsel, as well as defendant's statement of allocution, as well as any pertinent factors in aggravation and mitigation. Defendant is not eligible for probation based on his prior criminal history. The State recommends six years. The defense recommends three years.

Defendant's statement in allocution did not accept any responsibility for the crime that he was found guilty of. I don't have any indication that this conduct would not be likely to recur in the future. Defendant is, therefore, sentenced to period of six years in [IDOC]."

The court concluded by informing defendant he was also subject to a two-year period of MSR and various fines, fees, and costs, and it informed him of his credit for time in custody prior to trial and his appeal rights.

¶ 12 Defendant filed a motion for reconsideration of sentence five days after sentencing (misidentifying the offense for which defendant was convicted as "unlawful possession of a controlled substance with an intent to deliver" instead of the actual offense of "unlawful delivery of controlled substance"). He argued the trial court gave undue weight to factors in aggravation and insufficient weight to factors in mitigation. He also claimed the court's "emphasis on defendant's lack of remorse was 'misplaced' because as defendant maintained his innocence he could 'hardly be expected to be remorseful for something he did not do.' "

¶ 13 At the hearing in January 2018, defendant argued the trial court did not place enough consideration on rehabilitation and defendant could not be punished for maintaining his innocence. The trial court denied the motion without comment.

¶ 14 This appeal follows.

¶ 15                                  II. ANALYSIS

¶ 16 Defendant contends the trial court erred in sentencing defendant by considering the fact he continued to maintain his innocence as an aggravating factor.

¶ 17 A trial court has broad discretion in imposing a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448, 841 N.E.2d 889, 912 (2005). When a sentence falls within the statutory range of sentences possible for a particular offense, it is presumed reasonable. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56, 141 N.E.3d 320.

¶ 18 " 'Absent an abuse of discretion by the trial court, a sentence may not be altered upon review.' " *People v. Hensley*, 354 Ill. App. 3d 224, 234, 819 N.E.2d 1274, 1284 (2004) (quoting *People v. Kennedy*, 336 Ill. App. 3d 425, 433, 782 N.E.2d 864, 871 (2002)). An abuse of discretion will be found "where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense' " (*People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000))) or the court's sentencing decision is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26, 82 N.E.3d 693.

¶ 19 Here, the trial court noted, and both sides agreed, defendant was subject to extended-term sentencing and it was nonprobationable. Defendant was therefore eligible for any sentence between 3 and 14 years. As a result, we start with the presumption the court's sentence of six years was reasonable. *Musgrave*, 2019 IL App (4th) 170106, ¶ 56 (stating a sentence within the statutory range of sentences is presumed reasonable). Whether the trial court relied upon an improper factor during sentencing is a question of law we review *de novo*. *People v. Arbuckle*, 2016 IL App (3d) 121014-B, ¶ 39, 60 N.E.3d 185. However, in *Musgrave*, we pointed out the strong presumption favoring the propriety of a trial court's sentence continues, and as a reviewing court, we must consider the entire record rather than a few isolated statements. *Musgrave*, 2019 IL App (4th) 170106, ¶ 55. Further, it is defendant's burden to "affirmatively establish that his sentence was based on an improper factor." *Musgrave*, 2019 IL App (4th) 170106, ¶ 55 (citing *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18, 99 N.E.3d 590).

¶ 20 Defendant relies on one comment made by the trial court when pronouncing sentence. The court acknowledged having considered the PSI, arguments of counsel, and

defendant's statement in allocution, as well as "any pertinent factors in aggravation and mitigation." The court noted defendant's criminal history, his ineligibility for probation, and the recommendations made by each side, and it concluded with:

> "Defendant's statement in allocution did not accept any responsibility for the crime that he was found guilty of. I don't have any indication that this conduct would not be likely to recur in the future."

¶ 21     This court recently considered a similar argument in *People v. Donlow*, 2020 IL App (4th) 170374, where it was argued the trial court erred when it considered defendant's continued claim of innocence as a factor in aggravation at sentencing. In *Donlow*, this court, like defendant here, cited *People v. Speed*, 129 Ill. App. 3d 348, 472 N.E.2d 572 (1984), but for a somewhat different proposition: "trial courts may consider a defendant's lack of remorse or lack of veracity in imposing a sentence, since those are factors which may have a 'bearing on the defendant's potential for rehabilitation.' " *Donlow*, 2020 IL App (4th) 170374, ¶ 84 (quoting *Speed*, 129 Ill. App. 3d at 349). To provide some guidance, we explained what reviewing courts consider when determining whether a trial court "took defendant's failure to admit his guilt following conviction into account in its decision." *Donlow*, 2020 IL App (4th) 170374, ¶ 84. If the trial court "expressly indicated or implied that defendant would have received better treatment on sentencing if he had abandoned his claim of innocence" (like it did in *Speed*), it is more likely to result in a finding the sentence was improperly influenced. *Donlow*, 2020 IL App (4th) 170374, ¶ 84. If, however, "the record shows that the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a

defendant's claim of innocence will not amount to reversible error." (Internal quotation marks omitted.) *Donlow*, 2020 IL App (4th) 170374, ¶ 84.

¶ 22   Here, the trial court connected defendant's protestation of innocence directly to the likelihood of rehabilitation in response to counsel's argument that the crime was "the result of circumstances unlikely to recur" and that defendant's character and attitude were such that he was "not likely to commit another crime." Remember, this is a defendant who had a prior conviction for delivery of cocaine (incorrectly identified as methamphetamine). The fact defendant maintained his innocence in light of an audio recording of a confidential informant arranging a purchase of cocaine with him over the phone, his presence in a car sitting outside his own residence when the informant walked up, and a video recording of the transaction both the trial court and the jury observed were all matters the court could consider in weighing defendant's credibility. In *People v. McDade*, 219 Ill. App. 3d 317, 579 N.E.2d 1173 (1991), this court noted our supreme court's language in *People v. Ward*, 113 Ill. 2d 516, 499 N.E.2d 422 (1986), a case relied upon by both defendant and the State here. We pointed out the supreme court said:

> "[A] trial judge must consider all matters reflecting upon the
> defendant's personality, propensities, purposes, tendencies, and
> every aspect of his life relevant to the sentencing proceeding. The
> court further stated that in some instances and under certain factual
> circumstances, a continued protestation of innocence and the lack
> of remorse may convey a strong message to the trial judge that the
> defendant is an unmitigated liar and at continued war with society.
> Such impressions garnered by the trial judge from the entire

proceedings are proper factors to consider in imposing sentence."

*McDade*, 219 Ill. App. 3d at 331 (discussing *Ward*, 113 Ill. 2d at 528).

¶ 23    We reaffirmed our *McDade* holding in *People v. Barger*, 251 Ill. App. 3d 448, 624 N.E.2d 405 (1993), where the defendant claimed the trial court erred by improperly considering his lack of remorse when it sentenced him to prison rather than the probation sentence he requested. Referencing *McDade*, we again cited the supreme court's language from *Ward* and noted, although the trial court cannot " 'automatically and arbitrarily' " do so, a trial court can consider a defendant's continued protestation of innocence on his rehabilitative potential. *Barger*, 251 Ill. App. 3d at 468 (quoting *Ward*, 113 Ill. 2d at 529). We went on to note even the United States Supreme Court has sanctioned a sentencing court " 'to conclude that a defendant who commits a crime and then perjures [himself] in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the trial process.' " *Barger*, 251 Ill. App. 3d at 469 (quoting *United States v. Dunnigan*, 507 U.S. 87, 97 (1993)).

¶ 24    We point this out because here the trial court did not go nearly so far. In fact, although mentioned by the State in their recommendation, the trial court declined its offer to consider what the State referred to as defendant's perjury, and it limited its consideration only to how defendant's continued claim of innocence impacted his rehabilitative potential. The trial court listened to the witnesses, viewed and heard the video and audio recordings of the transaction, and heard defendant's comments in allocution. "We believe that the impact of the defendant's testimony and statement upon the trial judge, assessed in light of the other information revealed during the course of the trial and the sentencing hearing, can hardly be said

- 10 -

to be irrelevant to an appraisal of the defendant's character and his prospects for rehabilitation." *Ward*, 113 Ill. 2d at 528.

¶ 25 The trial court's reference to defendant's continued protestation of innocence was not an improper aggravating factor. Further, defendant has failed to show how the trial court may have considered it improperly when imposing sentence. Defendant had previously received a three-year sentence to IDOC and had several felony convictions since then, including a prior delivery of cocaine. Although eligible for any term between 3 and 14 years, the court sentenced him to 6 years, a sentence less than half of what he could have received. We cannot find such a sentence to be " 'manifestly disproportionate to the nature of the offense,' " (*Alexander*, 239 Ill. 2d at 212 (quoting *Stacey*, 193 Ill. 2d at 210)), or "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Etherton*, 2017 IL App (5th) 140427, ¶ 26.

¶ 26                                    III. CONCLUSION

¶ 27 For the reasons set forth above, we affirm the trial court's judgment and sentence.

¶ 28 Affirmed.